UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| STEVE WILSTEAD,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED HERITAGE LIFE INSURANCE COMPANY,<br><br>        Defendant. | No. 1:19-cv-00276 WBS<br><br>MEMORANDUM AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Steve Wilstead ("plaintiff") brought this action against defendant United Heritage Life Insurance Company ("United Heritage" or "defendant") alleging he was wrongly denied long-term disability benefits under his employer's group benefits plan in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (Compl. (Docket No. 1).) Both parties move for summary judgment. (Docket Nos. 27, 31.)

I.    Facts & Procedural Background

        Plaintiff was a Certified Registered Nurse Anesthetist

1

employed by Anesthesia Associates of Boise.  (Pl.'s Statement of Undisputed Fact ("Pl.'s SUF") ¶¶ 1, 6 (Docket No. 31-2); Def.'s Statement of Undisputed Fact ("Def.'s SUF") ¶ 12 (Docket No. 28).)  Plaintiff suffered a shoulder injury in a motorcycle accident in August 2016, which required surgery.  (Pl.'s SUF ¶ 7; Def.'s SUF ¶ 13.)  Due to plaintiff's injuries, he stopped working on November 18, 2016.  (Pl.'s SUF ¶ 9.)  Following surgery, plaintiff was prescribed opioid pain medications and later developed an addiction to them.  (Pl.'s SUF ¶ 26; Def.'s SUF ¶ 14.)  Plaintiff subsequently submitted a claim for long-term disability benefits under his employer's group long-term disability benefits plan based on his shoulder injury, substance abuse, and depression.  (Pl.'s SUF ¶ 12; Def.'s SUF ¶ 15.)

United Heritage is the claim administrator of Anesthesia Associates of Boise's long-term disability benefits plan.  (Def.'s SUF ¶ 4.)  To claim benefits under the plan, United Heritage requires claimants to submit a Proof of Loss providing documentation supporting the disability claim.  (Admin. Rec. ("AR") at 22.)  In relevant part, the policy defines "disability" as:

> [The Claimant is] prevented from performing one or more of the Essential Duties of:
> 1) [The Claimant's] Occupation during the Elimination Period;
> 2) [The Claimant's] Occupation for the 24 months following the Elimination Period, and as a result [The Claimant's] Current Monthly Earnings are less than 80% of [The Claimant's] Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation

(Id. at 6.)  Disability could result from, among other things,

2

substance abuse.  (Id.)  After plaintiff submitted his claim and required records, defendant referred plaintiff's medical records to an outside medical review vendor, MES Solutions.  (Def.'s SUF ¶ 19.)  There, Dr. Roy Q. Sanders and Dr. Christopher R. Balint, two independent physicians, reviewed plaintiff's cliam, both concluding that he did not have any long-term functional impairment due to his shoulder injury, substance abuse, or depression.  (AR at 314-324.)  Based on those reports, United Heritage approved the payment of disability benefits to plaintiff for a limited period, ending on April 3, 2017.  (AR at 152-56.)

Plaintiff appealed United Heritage's determination regarding his long-term disability claim based on his substance abuse.  (AR 231-42; Pl.'s SUF ¶ 17; Def.'s SUF ¶ 42.)  He did not appeal the determinations based on his shoulder injury and depression.  (AR at 231-36.)  United Heritage referred his medical records to Exam Coordinators Network to obtain another independent review of plaintiff's appeal.  (Def.'s SUF ¶ 44.)  There, Dr. Steven I. Dyckman concluded that plaintiff was not able to resume his occupation as a nurse until July 30, 2017 because he suffered from "severe depression and anxiety symptoms including hopelessness, suicidal thoughts, and decreased concentration."  (AR at 226.)  Consequently, United Heritage revised its initial decision and extended the period of payable disability benefits to July 30, 2017.  (AR at 163-66; Def.'s SUF ¶ 54.)  However, its ultimate denial of long-term disability benefits remained unchanged.  (AR at 163-66.)  United Heritage notified plaintiff he had exhausted his administrative remedies on July 17, 2018 and this suit followed.  (Pl.'s SUF ¶ 23; Def.'s

SUF ¶ 55.)

## II. Discussion

### A. Standard of Review

In ERISA actions challenging denials of benefits under 29 U.S.C. § 1132(a)(1)(B), "[d]e novo is the default standard of review." Abatie v. Alta Heath & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (internal citations omitted); see also Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc). If the plan grants the plan administrator discretion to determine eligibility for benefits and interpret the terms of the plan, a reviewing court applies an abuse of discretion standard. Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income, 349 F.3d 1098, 1102 (9th Cir. 2003); see also Abatie, 458 F.3d at 963 (citing Kearney, 174 F.3d at 1090). The plan must "unambiguously" grant the administrator discretion for abuse of discretion to apply, though there is no "magic word" requirement. Abatie, 458 F.3d at 963 (citing Kearney, 175 F.3d at 1090).

Here, Section VIII of Anesthesia Associates of Boise's plan confers upon United Heritage the "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." (AR at 26.) Accordingly, the abuse of discretion standard should apply, absent state intervention which spares state policies from ERISA preemption. See, e.g. Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625, 856 F.3d 686, 689 (9th Cir. 2017) (finding California's prohibition on discretionary clauses fell within ERISA's saving clause when the plan was funded by insurance policies and was therefore not preempted by ERISA).

1. Idaho's Limited Prohibition on Discretionary Clauses

"ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016) (quoting Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001)). However, as plaintiff notes, (Pl.'s MSJ at 3), ERISA's savings clauses spares "any law of any State which regulates insurance, banking, or securities" from preemption. Williby v. Aetna Life Insur. Co., 867 F.3d 1129, 1135 (9th Cir. 2017) (quoting 29 U.S.C. § 1144(b)(2)(A)). Idaho Administrative Code 18.04.07 prohibits health insurance contracts from containing discretionary clauses while transacting insurance in Idaho. See Idaho Admin. Code r. 18.04.07.011. Before reaching the question of whether ERISA's savings clause allows Idaho Administrative Code 18.04.07 to apply despite ERISA's preemptive force, as plaintiff contends, the court must consider the base question of whether Idaho Administrative Code 18.04.07 even applies to this policy.

Idaho Administrative Code 18.04.07.10(05) defines "Health Insurance Contract" as "any policy, contract, certificate, agreement, or other form or document providing, defining, or explaining coverage for health care services that [are] offered, delivered, issued for delivery, continued, or renewed in this state by a health carrier." Idaho Admin. Code r. 18.04.07.010(05). A "Health Carrier" is defined as "[a]n entity subject to regulation under Title 41, Chapter 21" of the Idaho Code, and "Health Care Services" are defined as "[s]ervices for

5

the diagnosis, prevention, treatment, cure or relief of a health condition, illness, injury, or disease." Id. at (03)-(04). Importantly, the chapter "does not apply to health insurance contract[s] for group coverage offered by or through an employer to its employees." Idaho Admin. Code r. 18.04.07.001(02).

Plaintiff concedes that "the Plan, as administered by United Heritage, is not a health care contract since it does not provide health care services, as defined by the Code." (Pl.'s Reply at 2.) Nevertheless, plaintiff maintains that United Heritage is still subject to the code because it is an entity regulated by Title 41, Chapter 21 of the Idaho Code as a carrier of disability insurance. (Pl.'s Reply at 2. (citing Idaho Code § 41-2101, et seq.).) While Title 41, Chapter 21 of the Idaho Code applies to disability insurance policies broadly, "any group or blanket policy," such as the one administered by United Heritage, is exempt from regulation. See Idaho Code § 41-2101(A) ("Nothing in this chapter shall apply to or affect . . . Any group or blanket policy"). Accordingly, Idaho Administrative Code 18.04.07 does not apply to the policy here and does not prohibit the application of the policy's discretionary clause.[1]

Because the provision in the Idaho Administrative Code does not apply, the court need not consider what role ERISA's

---

[1] Even if Idaho Administrative Code 18.04.07's ban on discretionary clauses were to apply to the United Heritage policy, the provision's exception for group coverage "offered by or through an employer to its employees" would exempt the policy from the ban. Id. Anesthesia Associates of Boise's group long-term disability plan, as a group policy offered through plaintiff's employer to its employees, falls squarely within the stated exception. See Idaho Admin. Code r. 18.04.07.010(05).

savings clause would have on the matter.  Accordingly, the unambiguous grant of discretion to United Heritage as the plan's administrator triggers the application of the abuse of discretion standard.  See Abatie, 458 F.3d at 963 (citing Kearney, 175 F.3d at 1090).

### 2. Structural Conflict of Interest

Under an abuse of discretion standard of review, an administrator's evaluation "will not be disturbed if reasonable." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). Under that standard, the court is limited to a review of the administrative record.  See Jebian, 349 F.3d at 1110.  To find an abuse of discretion, the court must have a "definite and firm conviction that a mistake has been committed and . . . may not merely substitute [its] view for that of the fact finder." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011).  An ERISA administrator abuses its discretion only if the administrator "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact."  Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir. 2005).

However, the court's deference to the administrator's decision may be tempered by a structural conflict of interest. Abatie, 458 F.3d at 965 (quoting Firestone, 489 U.S. at 115). Where, as here, an insurer acts as both the plan administrator and the funding source for benefits, there is a structural conflict of interest.  See id. (citing Tremain v. Bell Indus.,

1   Inc., 196 F.3d 970, 976 (9th Cir. 1999)).  If the administrator
2   is operating under a conflict of interest, that conflict must be
3   weighed as a "facto[r] in determining whether there is an abuse
4   of discretion."  Firestone, 489 U.S. at 115.  The court's review
5   of the administrator's decision will be "tempered by skepticism"
6   to the degree of the severity of the conflict.  Abatie, 458 F.3d
7   at 959.  In order to weigh a conflict more heavily, the claimant
8   must provide "material, probative evidence, beyond the mere fact
9   of the apparent conflict, tending to show that the fiduciary's
10  self-interest caused a breach of the administrator's fiduciary
11  obligations to the beneficiary."  Tremain, 196 F.3d at 976; see
12  also Abatie, 458 F.3d at 968.  Conversely, a dual role capacity
13  structural conflict "should prove less important (perhaps to the
14  vanishing point) where the administrator has taken active steps
15  to reduce potential bias and to promote accuracy."  Metro. Life
16  Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008).

17              Here, plaintiff did not submit any evidence to show
18  that United Heritage's structural conflict caused a breach of its
19  fiduciary duty.  Instead, United Heritage exhaustively explained
20  its efforts to "wall off" claims personnel from the company's
21  finance department to ensure claims investigations are made
22  separately from, and without consideration of, the financial
23  affairs of United Heritage.  (Def.'s Reply at Ex. A (Docket No.
24  33-1).)  United Heritage also represents it has a check against
25  the arbitrary denial of claims by maintaining a separate appeals
26  unit for the independent consideration of denied claims.  (Id.)
27  Other courts have "give[n] little weight to the [structural]
28  conflict" following similar representations.  See Baker v.

8

1  Hartford Life & Acc. Ins. Co., No. 4:14-cv-209 BLW, 2015 WL
2  769962, at *5 (D. Idaho Feb. 23, 2015).  Accordingly, United
3  Heritage's evaluation "will not be disturbed if reasonable."
4  Firestone, 489 U.S. at 111.
5      B.   Analysis
6          When considering a claim for benefits, ERISA
7  administrators have a duty to adequately investigate the claim.
8  Booton v. Lockheed Med. Ben. Plan, 110 F.3d 1461, 1463 (9th Cir.
9  1997).  If the administrator "believes more information is needed
10 to make a reasoned decision, they must ask for it."  Id.
11 However, "the plan administrator's decision can be upheld if it
12 is grounded on any reasonable basis."  Montour v. Hartford Life &
13 Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009) (internal
14 citations omitted).  The central question before the court is not
15 "whose interpretation of the plan documents is most persuasive,
16 but whether the . . . interpretation is unreasonable."  Canseco
17 v. Const. Laborers Pension Tr., 93 F.3d 600, 609 (9th Cir. 1996).
18 The court will only find United Heritage's determination
19 "unreasonable" if "it render[ed] a decision without an
20 explanation, constru[ed] provisions of the plan in a way that
21 conflicts with the plain language of the plan, or fail[ed] to
22 develop facts necessary to its determination."  Pac. Shore Hosp.
23 v. United Behavorial Health, 764 F.3d 1030, 1042 (9th Cir. 2014).
24        1.   Initial Determination
25         In its first evaluation of plaintiff's claim, United
26 Heritage obtained the independent reviews of Dr. Sanders and Dr.
27 Balint through MES Solutions.  (AR at 314-324.)  Dr. Sanders is
28 Board Certified in Psychiatry, with a specialty in addiction, and

9

1   Dr. Balint is Board Certified in Orthopedic Surgery.  (Id. at
2   314, 319.)  Dr. Sanders evaluated the impact of plaintiff's
3   opioid addiction on his ability to work, while Dr. Balint
4   considered whether plaintiff's shoulder injury would impair his
5   employment.  (See generally id. at 314-24.)
6          Both physicians thoroughly evaluated and summarized
7   "all medical records received," including "claimant's most recent
8   self-reported statements of functionality."  (Id. at 314, 319.)
9   They consulted with each other about proposed physical and
10  psychiatric limitations/restrictions following their independent
11  reviews.  (Id. at 314, 319.)  Neither were able to reach
12  plaintiff's treating physicians, Mr. Terry Miller and Dr. Daniel
13  Reed, for further information even after multiple attempts at
14  contact.  (Id. at 314, 319.)
15         After a detailed review, Dr. Sanders and Dr. Balint
16  eventually concluded that plaintiff was fit to return to work
17  "with supervision."  (Id. at 318.)  As for plaintiff's
18  psychological state, Dr. Sanders found plaintiff was able to
19  "engage with patients," "take directions," "give instructions,"
20  and "reliably perform tasks as requested and required by the
21  employer."  (Id. at 318.)  Dr. Balint found that there were no
22  physical limitations on the number of hours per day plaintiff
23  could work, due in part to the fact that there was "no
24  documentation of weakness, pain, or impingement that would
25  prevent the claimant from returning to full, unrestricted work on
26  a full time basis."  (Id. at 323.)
27         Plaintiff contends the physicians' evaluations are
28  deficient because neither doctor physically examined him, and

10

1  furthermore, the doctors relied upon "incomplete" medical
2  records. (Pl.'s Resp. at 6 (Docket No. 32).)  However, neither
3  Anesthesia Associates of Boise's plan nor ERISA require a peer
4  review physician to examine a claimant during their review.  (See
5  generally AR at 1-31.)  Similarly, both doctors attested to
6  evaluating "all medical records received," although they
7  acknowledged recent records were "few."  (Id. at 318.)  Under the
8  terms of the plan, plaintiff was required to provide proof of his
9  disability and provide United Heritage with the records necessary
10 to properly evaluate his claim.  (Id. at 22.); see also Cady v.
11 Hartford Life & Accidental Ins. Co., 930 F. Supp. 2d 1216, 1127
12 (D. Idaho 2013) ("[I]f a plan participant fails to bring evidence
13 to the attention of the administrator, the participant cannot
14 complain of the administrator's failure to consider such
15 evidence.").
16         From the administrative record, it is not readily
17 apparent that United Heritage erred in denying plaintiff long-
18 term disability benefits because United Heritage reasonably
19 relied on medical determinations produced by Dr. Sanders and Dr.
20 Balint after careful review of plaintiff's file.  Consequently,
21 Unite Heritage did not abuse its discretion and the court will
22 not reverse its initial denial of benefits.
23         2.   The Appeal
24         Similarly, United Heritage's denial of plaintiff's
25 claim after his appeal was also reasonable.  After plaintiff
26 appealed, United Heritage obtained another independent review
27 from Dr. Dyckman.  (AR at 218-221.)  Dr. Dyckman is Board
28 Certified in General Psychiatry, although he specializes in child

1 and adolescent psychiatry.  (Def.'s Reply at 15.)  Plaintiff
2 argues that the review by United Heritage and Dr. Dyckman of his
3 appeal was deficient for three main reasons: first, Dr. Dyckman
4 did not consider the American Association of Nurse Anesthetists
5 Re-entry Recommendations for recovering nurses in making his
6 recommendations; second, Dr. Dyckman did not consider the
7 recommendations provided by plaintiff's attending counselor; and
8 third, United Heritage did not consider whether plaintiff's risk
9 of relapse into substance abuse rose to the level of a disability
10 in and of itself.  (See Pl.'s MSJ at 15-21.)  Each will be
11 discussed in turn.
12       First, plaintiff criticizes Dr. Dyckman's conclusion
13 that "there is no guideline . . . [that] claimant should be
14 abstinent for at least a year before returning to work [as a
15 nurse anesthetist]."  (AR at 227.)  Plaintiff argues this
16 conclusion amounts to a blatant disregard of the American
17 Association of Nurse Anesthetists Re-entry Recommendations ("the
18 Guidelines").  (Pl.'s MSJ at 15-16.)  While Dr. Dyckman did not
19 expressly consider the Guidelines during his limited review of
20 the "psychiatric and/or cognitive restrictions and limitations"
21 the other doctors had recommended, (AR at 226-27), United
22 Heritage considered the Guidelines when evaluating plaintiff's
23 appeal.  (AR at 165.)  The Guidelines provide, in part, nurses
24 "may" return to work "in a supervised setting" following
25 treatment for addiction, although recognizing "more time away
26 from the workplace may be needed to reduce risk of relapse."
27 (Pl.'s MSJ at 8 n. 2 (quoting Opioid Abuse Among Nurse
28 Anesthetist and Anesthesiologists, AANA Journal, April 2012 at

12

1  120, 125).)  The Guideline's recommendation that recovering
2  nurses may practice under supervision mirrors the recommendations
3  both Dr. Dyckman and Dr. Sanders gave for plaintiff's return to
4  work.  (See AR at 227, 318.)
5       Second, plaintiff argues that Dr. Dyckman's conclusions
6  should be disregarded because he did not consider the
7  recommendations provided by plaintiff's attending therapist, Mr.
8  Terry Miller.  (Pl.'s MSJ at 15-16.)  On appeal, plaintiff was
9  offered the opportunity to submit updated clinical records or new
10 information to substantiate his disability claim.  (AR at 159-
11 60.)  Instead of submitting additional medical records, plaintiff
12 submitted, inter alia, a May 2018 letter written by Mr. Miller.
13 (AR at 237.)  In that letter, Mr. Miller stated he felt plaintiff
14 could not return to work until he had completed "at least one
15 year of abstinence" and continued treatment through regular
16 attendance at a 12-step support group because "handling the
17 medications that led to his addition crisis" at work could pose a
18 substantial threat of relapse.  (AR at 237.)  However, contrary
19 to plaintiff's representations that Dr. Dyckman did not review
20 the letter, (Pl.'s MSJ at 16), Dr. Dyckman thoroughly explained
21 why he disagreed with Mr. Miller's conclusions in his review of
22 plaintiff's file.  (See AR 227.)  Agreeing with Dr. Sanders, Dr.
23 Dyckman found "claimant would be able to return to work as long
24 as there were proper guidelines in place and the claimant
25 continued to receive outpatient therapy."  (Id.)
26      Further, United Heritage was not bound by Mr. Miller's
27 recommendations.  "[P]lan administrators are not obliged to
28 accord special deference to the opinions of treating physicians."

13

Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). Although Mr. Miller and Dr. Dyckman offered different conclusions, the administrative record reveals that, when plaintiff's benefits ended on July 30, 2017, he was physically and mentally capable of performing his occupational duties. (See AR at 227, 318.) The reviewing physicians' reports thoroughly summarize the pertinent medical records and provide a careful analysis of plaintiff's physical and psychiatric capabilities. United Heritage denied plaintiff's claim based on the facts in the record and adequately explained why in letters to plaintiff. (See AR at 163-166.); see also Pac. Shore Hosp., 764 F.3d at 1042.

Third, plaintiff argues that United Heritage erred in determining that he was not currently disabled and maintains that his risk of relapse into substance abuse constitutes a disability in and of itself. (See Pl.'s MSJ at 17-21.) Plaintiff relies on Colby v. Union Security Insurance Co. & Management Co. for Merrimack Anesthesia Associates Long Term Disability Plan., 705 F.3d 58, 60 (1st Cir. 2013) to support this proposition. In Colby, the plaintiff was an anesthesiologist, who, like plaintiff, self-administered opioids on the job and became addicted. See Colby, 705 F.3d at 60. However, the plaintiff in Colby is readily distinguishable from plaintiff here; she had unique characteristics which made her risk of relapse particularly severe, including disabling back pain, an extremely turbulent personal life, various mental health disorders including obsessive-compulsive personality traits, and previous instances of relapse. Id. at 63. Plaintiff does not appear to

have any of those characteristics.

Moreover, the Colby court makes clear that their holding is "narrow . . . pivot[ing] on a fusion of the plain language of the plan and [defendant]'s all-or-nothing approach to its benefits determination." Id., at 67.  The defendant in Colby categorically denied that risk of relapse or future disability could be considered a current disability for which benefits are available, despite the particularly high-risk factors for the plaintiff. See id. at 61.  Here, in contrast, United Heritage issued no such categorical denial, but rather found that the AANA Guidelines which recommend "[a] minimum of one year in recovery before returning to the clinical anesthesia arena", (AR 238), "alone [do not] constitute disability." (See AR at 165.)  This court therefore agrees with the Fourth Circuit in Stanford v. Continental Casualty Co., 514 F.3d 354 (4th Cir. 2008), abrogated on other grounds in Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353 (4th Cir. 2008), that there is widespread, thoughtful, and reasonable disagreement among the courts "as to whether the risk of relapse renders an addict unable to perform the material and substantial duties of his work." See Stanford, 514 F.3d at 359-60 (affirming determination made by insurance company finding that plaintiff's risk of relapse did not constitute a disability in of itself notwithstanding plaintiff's opiate addition and instance of relapse after returning to work was not unreasonable under an abuse of discretion standard.)  Accordingly, the decision of United Heritage to deny plaintiff long-term disability benefits based on the risk of relapse into substance abuse cannot "be termed unreasonable" under an abuse of

discretion standard of review.  <u>Id.</u> at 360.  Consequently, United Heritage reasonably denied plaintiff's claim for long-term disability benefits after July 30, 2017.

For the foregoing reasons, the court finds that United Heritage did not abuse its discretion in determining that plaintiff was not disabled under the policy's definition of "disability" after July 30, 2017.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Docket No. 27) be, and the same hereby is, GRANTED, and that plaintiff's motion for summary judgment (Docket No. 31) be, and the same hereby is, DENIED.  The Clerk of the Court is instructed to enter judgment in favor of defendant United Heritage Life Insurance Company and against plaintiff Steve Wilstead.

Dated:  September 9, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE